**J. WEINGARTEN, INC., Appellant,**

v.

**Betty Jean TRIPPLETT, Appellee.**

**No. 7733.**

Court of Civil Appeals of Texas, Beaumont.

Nov. 26, 1975.

Rehearing Denied Dec. 18, 1975.

**654**

Benckenstein & Norvell, Beaumont, for appellant.

James W. Mehaffy, Jr., Beaumont, for appellee.

KEITH, Justice.

Our opinions of October 16, 1975, are hereby withdrawn and the following is substituted in lieu thereof.

This is the second appeal in a slip and fall case, this court, in an unpublished opinion, having reversed the judgment of the trial court upon the first appeal. Upon the second trial the pleadings were identical and the evidence substantially the same except for the testimony of one expert witness offered by the plaintiff.

Each special issue necessary for plaintiff's recovery was answered in her favor, and the judgment followed the verdict. Defendant assails the judgment with many points of error including no evidence, insufficient evidence, and great weight and preponderance of the evidence points.

Plaintiff testified that it had been raining hard with a blowing rain before she entered defendant's store. She said that the doors to the store did not close completely, a condition which she had observed several weeks earlier. She fell upon the floor about five feet inside the doorway. After her fall she looked around to see what may have caused her fall and described the substance on the floor in this manner:

"It was a sort of film of dust like on the floor, sort of like as if you would paint or a light film and it wasn't completely dry, solid, you know, and after I fell when I got up I noticed my dress had some dust on it. And I looked around and there had been quite a bit of walking in a large area."

She described the area covered by the substance as being "eight or ten feet" all around her, and she estimated that there were fifty or so footprints in the substance.

In our earlier opinion, this court, following the well established substantive law governing such cases, held that the evidence was legally insufficient to show that defendant or its agents had placed the substance on the floor; that the defendant knew that the foreign substance was on the floor or negligently failed to remove it; or that the substance had been upon the floor for such a period of time that it would have been discovered had the defendant exercised ordinary care.

Upon this trial plaintiff offered Dr. Swiki A. Anderson as her expert witness seeking thereby to supply the missing element of time pointed out in our prior opinion. Dr. Anderson, a registered professional engineer and an assistant professor of Texas A. & M. University, testified that his specialty was fluid flow and heat transfer; or, as he put it: "[T]he evaporation of water is in my domain of interest." He answered a lengthy, involved, and convoluted hypothetical question—interspersed with frequent objections—that in his opinion the water had been upon the floor for 28.8 minutes.

The jury found in answer to Special Issue No. 4 that the film of mud had been on the floor for such period of time that in the exercise of ordinary care the defendant should have discovered it and removed it; that such failure to remove the film of mud was negligence proximately causing the accident.

Defendant contends that plaintiff's counsel included many assumptions of fact in the hypothetical question which were not supported by the facts in the record. We set out in parallel columns some of the assumptions made; and, in the other column, we set out information from the official Local Climatological Data form completed by the officials in charge of the weather bureau at Jefferson County Airport some five or ten miles from the store in question.

| Assumption | Climatological Data |
|---|---|
| 1. 3.02 inches of rain. | 1. There was 3.02 inches of rain at the airport during the 24-hour period of the day in question. |
| 2. Dry bulb temperature: 74° | 2. Dry bulb temperature: 74° |
| 3. Wet bulb temperature: 72° | 3. Wet bulb temperature: 73° |
| 4. Relative humidity: 93% | 4. Relative humidity: 94% |
| 5. Dew point: 71.4° | 5. Dew point: 72° |

Dr. Anderson also assumed that the water thickness where plaintiff fell was one-eighth of an inch; that the film had a diameter of ten feet; that the air velocity in the store was 150 feet per minute; that the floor was completely level and flat. The radius of the area was compatible with plaintiff's own testimony and the level floor assumption was a reasonable inference from all of the testimony in the record. Dr. Anderson explained that the one-eighth thickness of the water was caused by "surface tension effect . . . [of water] which tends to pull the molecules together forming a cohesive force." An explanation, in scientific language, was made as to the surface wind velocity in the store.

Defendant's objections at the trial were clear and specific and were followed by a motion to strike the testimony. Upon appeal, defendant's first six points of error complain of the admission of the conclusion tending to establish that the film had been on the floor for 28.8 minutes was based upon assumed facts not shown in the record.

Before turning to a consideration of defendant's points of error challenging the conclusion reached by Dr. Anderson, it is well to restate some of the rules governing the receipt of opinion evidence from an expert. Thus we recognize the rule that considerable latitude is permitted in the propounding of hypothetical questions to expert witnesses, and the form and wording of the questions is left largely to the discretion of the trial court. *Foreman v. Texas Employers' Ins. Ass'n,* 150 Tex. 468, 241 S.W.2d 977, 980 (1951). It is certainly true that "[h]ypothetical questions should be restricted to the facts in evidence; otherwise, they will be misleading and confusing and therefore prejudicial." *Texas Employers' Ins. Ass'n v. Fitzgerald,* 296 S.W. 509, 511 (Tex.Comm'n App.1927, holding approved). These words were adopted, without benefit of quotation marks, in *Gulf Oil Corporation v. Walker,* 288 S.W.2d 173, 186 (Tex.Civ. App.—Beaumont 1956, no writ). See, generally, *Sabelli v. Security Insurance Company of New Haven,* 372 S.W.2d 348, 351 (Tex.Civ.App.—Austin 1963, writ ref'd n. r. e.); and *Polasek v. Quinius,* 438 S.W.2d 828, 835 (Tex.Civ.App.—Austin 1969, writ ref'd n. r. e.).

We must also recognize the rule stated in *Aetna Casualty & Surety Company v.*

*Scruggs,* 413 S.W.2d 416, 422 (Tex.Civ.App. —Corpus Christi 1967, no writ), where the authorities supporting this statement are set out at length:

> "It is not necessary that the hypothetical question embrace every fact in evidence; it is within the province of counsel to assume, within the limits of the evidence, any state of facts which he claims the evidence justifies and which enables the witness to formulate an intelligent answer and have the opinion of the expert upon the facts assumed."

■ At the time the hypothetical question was propounded to the expert, the weather bureau report was not in evidence, and the trial court very properly overruled the objection with this comment, "provided counsel properly connects these matters up. If not, the Court will reconsider your objection." There then followed an exchange between respective parties as to whether Dr. Anderson was referring to data taken at 5 p. m. or 6 p. m. Plaintiff's counsel subsequently introduced the weather bureau chart and his examination of the witness, as can best be determined from the record, was based on the 6 p. m. data which has been set out earlier in the opinion. We are permitted to take judicial knowledge of a weather report for a particular day. *Texas & P. Ry. Co. v. Greene,* 291 S.W. 929 (Tex.Civ.App.—Fort Worth 1927), aff'd 299 S.W. 639 (Tex.Comm'n App.1927). The weather bureau records information every three hours; i. e., at 3, 6, 9 o'clock, etc. We thus note that there is no reference in the chart of *any* data allegedly taken at 5 p. m.

■ Upon cross-examination, defendant's counsel elicited from Dr. Anderson the conclusion that if his figures on the climatological data were different, his conclusions as to the amount of time that the water had been on the floor would vary. He stated that the conditions immediately inside the door of the store would be the same, or at most minimally different, as the conditions outside. Plaintiff's counsel then inquired as to how much difference he was talking

about in using defendant's calculations of any variance in conditions or if there were a few degrees difference in his figures.

> "Q. How much difference are we talking about?
>
> "A. Oh, plus or minus twenty per cent maybe, no more.
>
> "Q. Twenty per cent would be plus or minus.
>
> "A. Plus or minus six minutes."

We are of the opinion that the trial court did not err in overruling defendant's motion to strike Dr. Anderson's testimony. An expert witness is not confined to opinions on facts within his own knowledge. 2 C. McCormick & R. Ray, *Texas Law on Evidence,* § 1402 at 237 (1956). In *Shuffield v. Taylor,* 125 Tex. 601, 83 S.W.2d 955, 960 (1935), it was said that "[a] question is not necessarily improper because it includes only a part of the facts in evidence, provided it embraces enough of them to enable the witness to formulate an intelligent opinion." This proposition has more recently been stated in the following language:

> "It is not necessary to the propriety of such a question that it include a reference to all of the relevant facts in evidence *nor that it be confined to facts proven with mathematical certainty.* It may include inferences reasonably drawn from other facts proved and consistent with the theory of the party propounding the question." *Burns v. Bridge Engineering Corporation,* 465 S.W.2d 427, 432 (Tex.Civ. App.—Houston [14th Dist.] 1971, writ ref'd n. r. e.) (emphasis supplied)

Any discrepancies, if they may be labeled such, between the chart in evidence and the figures upon which Dr. Anderson based his conclusions were fully placed before the trier of fact and in the discretion of the lower court. His testimony reflects that even if defendant's calculations were used and there was a difference of a few degrees in his data, the water had been standing on defendant's floor for at least 22 minutes. We can not say that this was such a length

of time that the jury could not have believed that it would have been reasonable for the defendant to have discovered the pool of water and have taken steps to correct it. The trial court did not abuse his discretion. See *Foreman v. Texas Employers' Ins. Ass'n,* supra.

■ We overrule defendant's first six points of error complaining of the admission of the opinion of Dr. Anderson that the substance had been upon the floor at least 28.8 minutes before plaintiff fell. When Dr. Anderson's testimony is considered, as we must under the prevailing authorities cited, there is competent evidence to support the jury's answer to Special Issue No. 4 that the film of mud had been upon the floor for such a period of time that in the exercise of ordinary care the defendant should have discovered and removed it. Consequently, we overrule defendant's twelfth point of error contending that there was no evidence in the record supporting such findings. See *J. Weingarten, Inc. v. Nallie,* 516 S.W.2d 481 (Tex.Civ.App.— Beaumont 1974, writ ref'd n. r. e.).

The jury found, in answer to Special Issue No. 7, that the "defendant failed to provide mats for the entrance in question at the time and on the occasion in question," which was negligence and a proximate cause of the accident. Defendant attacks Special Issue No. 7 with a point of error contending that such issue is "immaterial to any issue in this case," followed by great weight and preponderance and insufficient evidence points. The subsidiary issues, Nos. 8 and 9, are challenged by no evidence, great weight and preponderance and insufficient evidence points.

In our review of the points challenging the sufficiency of the evidence, we will be governed by the rules laid down in *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965).

There is no doubt in our record that on the day in question rain had been falling in the area of defendant's store, and plaintiff testified that it was accompanied by considerable wind. She also testified that the doors were maintained in such manner as to permit the wind driven rain to be blown into the store. In this respect she was corroborated by one or more of defendant's employees. There is, however, a dispute between the parties as to the presence of mats at the entrance of the store.

We reproduce plaintiff's testimony concerning the presence of mats at the entrance of the store:

"When I walked in—as soon as I got in the store I noticed a mat, you know—as if the weather had been raining. *There wasn't no floor mat down by the door.* So I walked, it must have been about five feet after I got in the store, and I noticed there was a film like maybe dust had been on the floor and sprinkled something on it, you know, like—" (emphasis supplied)

Unfortunately, she does not enlighten us as to the location of the mat which she did see; but, neither counsel pursued the subject further. On the other hand, defendant's employees were understandably vague in their testimony as to the presence of the mat on the occasion in question. Each employee denied any knowledge of the fall and had no independent recollection of the conditions prevailing on the day of the accident. In other words, while each testified that a mat was usually at the entrance of the store, none of them could testify that such a mat was present at the time of the accident.

Plaintiff, relying upon the recent case of *Rosas v. Buddies Food Store,* 518 S.W.2d 534 (Tex.1975), argues:

"*Rosas* . . . clearly demonstrates that a storekeeper has a duty to use mats or any other means to prevent an accumulation of mud and water during inclement weather if doing so will prevent the maintenance of an unreasonable danger. Here, the plaintiff testified to the presence of a large area, eight to ten feet in radius all around her, of dry (but not dried) mud. This film contained foot

prints, as many as 50. The jury could have concluded, and obviously did, that had there been mats properly placed at the door, the door which as an integral part of the film of mud would never have been tracked into the store, so that the condition causing Plaintiff's injury would never have been created."

■ We disagree for several reasons. *First:* Justice Steakley, in *Rosas* was dealing with a summary judgment with the store owner laboring under the burden "of disproving as a matter of law one or more of the elements of negligence." (518 S.W.2d at 537) We deal with a case which has been fully developed after a trial on the merits. A different rule applies in such a situation. It was plaintiff's burden, upon the trial of the case, to prove each element necessary for her recovery. *Glenn v. Prestegord,* 456 S.W.2d 901, 903 (Tex.1970).

*Second:* There is no evidence in our record of other falls "attributable to the same condition," a matter chosen for special mention in *Rosas,* and one of the material facts used to distinguish the case then under consideration from *Camp v. J. H. Kirkpatrick Co.,* 250 S.W.2d 413 (Tex.Civ.App.— San Antonio 1952, writ ref'd n. r. e.), relied upon by the intermediate court in *Rosas* (518 S.W.2d at 537).

*Third:* The store manager in *Rosas* testified that "he was continually attempting to hold water accumulation in check, that mopping could only partially solve the problem." *Id.* at 538. We have no similar testimony in the case at bar.

*Finally,* from *Adam Dante Corporation v. Sharpe,* 483 S.W.2d 452, 454–455 (Tex.1972), the Court quoted again the now familiar provisions of *Restatement (Second) of Torts* § 343 (1965).

There is no evidence that the defendant put the mud on the floor; and, the only evidence supporting a finding that it had been there for a sufficiently long period of time that the defendant should have known of its presence is the testimony of Anderson recounted earlier. Plaintiff sought a recovery upon a new and independent ground—a failure to have mats at the entrance of its store.

Insofar as we can determine, no court has ever allowed recovery in an owner-invitee "slip and fall" case on this theory of negligence on the part of the owner. Plaintiff's theory of recovery in this case is that defendant's failure to have mats at the door was negligence which proximately caused the dangerous condition resulting in plaintiff's injury; and, because defendant's negligence caused the dangerous condition plaintiff is relieved of the burden of proving defendant knew of the dangerous condition or that it had been there long enough so that in the exercise of ordinary care, it should have been discovered and removed. We decline to extend the liability of an owner to cover that situation.

■ Moreover, there is yet another reason why plaintiff may not prevail upon the finding of the absence of mats—causation in fact. We paraphrase the language of Justice Greenhill in *Baumler v. Hazelwood,* 162 Tex. 361, 347 S.W.2d 560, 564 (1961): The definition of proximate cause embraces at least two distinct concepts, both of which must be present: (1) There must be cause in fact—a cause which produces an event and without which the event would not have occurred; and (2) foreseeability. Even assuming, without deciding, that there is some evidence of foreseeability as to the absence of the mats, we find no evidence that the absence of the mats in fact caused the accident. There is no evidence the presence of the mats would have prevented the formation of the film of mud in which the jury found plaintiff had fallen. There is no showing that the mats would have prevented rain from entering the store; and, more importantly, plaintiff did not fall in the area where the mats would have been located; she had passed far beyond such area when she says she encountered the mud. *Rosas* turned upon the issue of foreseeability (518 S.W.2d at 537)— not cause in fact. Here, as in *Seideneck v.*

*Cal Bayreuther Associates,* 451 S.W.2d 752 (Tex.1970), there is no evidence to support the finding of proximate cause.

Defendant's points 21–29, inclusive, are sustained.

We discuss defendant's remaining point of error in an appendix hereto which we order not published since it presents no question or application of any rule of law of interest or importance to the jurisprudence of this State. Tex.R.Civ.P. 452.

While we have sustained defendant's points 21–29, the judgment of the trial court will be affirmed. Points 21–29 deal with what is in effect an independent ground of recovery—the failure of defendant to keep mats at the entrance of the store. This issue is unrelated to the other points dealing with the defendant's negligence in failing to discover within a reasonable amount of time the pool of water/mud on the floor, and removing the same. Where there is no evidence to support an issue or issues which were answered by the jury, the trial court's judgment may still be affirmed if answers to other issues support the verdict. See *Collins v. Smith,* 142 Tex. 36, 175 S.W.2d 407 (1943); *Houston Lumber Supply Company v. Wockenfuss,* 386 S.W.2d 330, 337 (Tex.Civ.App.—Houston 1965, writ ref'd n. r. e.); *Tripp v. Watson,* 235 S.W.2d 677, 681 (Tex.Civ.App.—Fort Worth 1950, writ ref'd n. r. e.).

Affirmed.