**In the Interest of C.E.M. and C.B.M.**

No. 01–99–01019–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Dec. 28, 2000.

Marc D. Isenberg, Houston, for appellant.

Michael R. Hull, Houston, for appellee.

Panel consists of Justices O'CONNOR, HEDGES, and PRICE.*

## OPINION

O'CONNOR, Justice.

In four points of error, Karen Sue McGee, the appellant, appeals the jury verdict terminating her parental rights

with her two children, C.E.M.[1] and C.B.M.[2] We affirm.

## Background

The Texas Department of Protective and Regulatory Services (DPRS), the appellee, filed petitions to terminate the parent-child relationship between Karen Sue McGee and her two children. One child, C.E.M., is eight years old and the other, C.B.M., is 13 years old.

The case was tried to a jury. In the charge, the jury instructions tracked Family Code sections 161.001(1) and 161.003, and informed the jury that McGee's parental rights could be terminated only if the jury found (1) the termination was in the best interest of the child and (2) she did at least one of the following:

Knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered the physical or emotional well-being of the children; or

Engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered the physical or emotional well-being of the children.

The charge submitted a separate question for each child, "Should the parental rights of the mother, Karen Sue McGee, be terminated as to the child [C.B.M. or C.E.M.]?" The jury answered "yes" for each child.

On appeal, McGee challenges the sufficiency of the evidence to support the implied findings that she allowed the children to remain in conditions or surroundings

---

* The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

1. C.E.M.'s biological father, Lewis Canby, signed a waiver of interest terminating his rights to his child.

2. C.B.M.'s biological father, Abdul Hamid Hassoun, requested to be and was named managing conservator of C.B.M.

which endangered them and placed them with persons who engaged in conduct which endangered them, and an evidentiary ruling regarding impeachment of a witness.[3]

### A. Sufficiency of the Evidence

In points of error two through four, McGee contends the evidence was legally or factually insufficient to support the jury's various findings.

The jury made one finding for each child, that McGee's rights should be terminated. The jury was instructed that, before it could terminate her rights, the State was required to prove (1) one of the three statutory grounds for termination and (2) the termination was in the best interest of the child. Thus, when the jury found McGee's parental rights should be terminated, its findings implied there was evidence to support at least one of the three statutory grounds for termination, and the termination was in the best interest of the child.

### 1. Preservation of Error

To preserve a complaint for appellate review, a party must present to the trial court a timely request, objection, or motion stating the grounds for the ruling sought from the court with sufficient specificity to make the trial court aware of the complaint. Tex.R.App.P. 33.1(a)(1)(A); Wal–Mart Stores, Inc. v. McKenzie, 997 S.W.2d 278, 280 (Tex.1999). If the grounds for the ruling are apparent from the context, it is not necessary for the party to articulate them. Tex.R.App.P. 33.1(a)(1)(A).

### 2. Legal sufficiency

■ There are four ways to preserve legal sufficiency challenges. A party may include the complaint in (1) a motion for instructed verdict, (2) an objection to the submission of a jury question, (3) a motion for judgment notwithstanding the verdict, or (4) a motion for new trial. Cecil v. Smith, 804 S.W.2d 509, 510–11 (Tex.1991); Neller v. Kirschke, 922 S.W.2d 182, 187 (Tex.App.—Houston [1st Dist.] 1995, writ denied).

McGee made two motions in which she could have preserved challenges to the legal sufficiency of the evidence, her motion for directed verdict and her motion for new trial.

■ In her motion for directed verdict, McGee asked for an instructed verdict "on all grounds." Texas Rule of Civil Procedure 268 states "A motion for directed verdict shall state the specific grounds therefore." Tex.R.Civ.P. 268. McGee's motion does not state any specific ground, as required by Rule 268. Green v. Evans, 362 S.W.2d 377, 380 (Tex.App.—Dallas 1962, no writ). McGee's motion did not include any contentions about the insufficiency of the evidence she now makes on appeal.

McGee's motion for instructed verdict was too general to preserve error for review, to require consideration, or to constitute a basis on which to predicate reversal. See Reserve Life Ins. Co. v. Jansen, 357 S.W.2d 770, 771 (Tex.App.—Waco 1962, writ ref'd n.r.e.) "This requirement is designed to compel a frank disclosure of the basis of the motion so that the trial judge may rule on it with informed directness, and to prevent a termination of the trial in

---

**3.** The jury was also instructed that it could terminate if it found McGee had "a mental or emotional illness or a mental deficiency." On appeal, DPRS acknowledges it did not prove the elements of that ground for termination. Thus, it is not necessary for McGee to challenge that ground on appeal.

a judgment unjust upon the merits because of some technical oversight which could be supplied readily." 4 R. McDonald, Texas Civil Practice § 21.50, at 131 (1992). We hold McGee's motion for instructed verdict "on all grounds," did not preserve error for appeal. *See Jansen,* 357 S.W.2d at 771.

■ In her motion for new trial, McGee challenged the implied finding that termination was in the best interest of the children. On appeal, McGee challenges only the implied findings on the statutory reasons for termination; she does not challenge the best-interest finding. McGee's appellate complaint does not comport with her complaint in her motion for new trial. We hold McGee's motion for new trial did not preserve error for an appellate challenge of the legal insufficiency of the statutory reasons for termination.

McGee waived her legal sufficiency challenges.

### 3. Factual sufficiency

■ There is only one way to preserve a factual sufficiency challenge: include the complaint in a motion for new trial. TEX. R.CIV.P. 324(b)(2), (3); *Cecil,* 804 S.W.2d at 510; *Johnstone v. State,* 988 S.W.2d 950, 952 (Tex.App.—Houston [1st Dist.] 1999, no pet.).

■ As stated earlier, in her motion for new trial, McGee challenged the implied finding that termination was in the best interest of the children, but did not challenge any of the implied findings on the statutory grounds for termination. On appeal, McGee challenges only the implied findings of statutory reasons for termination; she does not challenge the best interest finding. We hold McGee waived her factual sufficiency challenges. TEX.

R.APP.P. 33.1(a) ("As a prerequisite to presenting a complaint for appellate review, the record must show that . . . the complaint was made to the trial court by a timely request, objection, or motion. . . ."); *McKenzie,* 997 S.W.2d at 280.

In summary, McGee waived all of her challenges to the sufficiency of the evidence to support the jury's implied findings. We overrule points of error two through four.

### B. Testimony of Prior Conviction

In point of error one, McGee argues the trial court erred in admitting evidence of her DWI convictions as improper impeachment.

### 1. Admission of the convictions

Martha Smith, McGee's mother and roommate, was the first witness to testify at trial. During Smith's testimony, the following exchange occurred between Smith and counsel for DPRS:

Q. In your opinion, does Mrs. McGee have a problem with alcohol?

A. No.

Q. Has she ever had a problem with alcohol?

A. Not a problem with alcohol. No.

DPRS approached the bench and informed the court it was going to offer certified copies of McGee's two DWI convictions.[4] McGee made two objections to the exhibits, first the exhibits were outside the 10 year period, and second, the exhibits were unduly prejudicial. The objections were overruled. After the DWI convictions were introduced into evidence, counsel for DPRS asked Smith:

---

4. The trial began on June 22, 1999 and ended on June 29, 1999. One conviction was in September 2, 1986 and the other was July 12, 1989.

Q. Ma'am, you're aware your daughter had two DWI convictions, are you not?

A. Yes.

Q. Do you think that indicates a problem with alcohol?

A. No, I do not. She was not drunk at one of those. She was sick.

McGee makes two arguments on appeal, the DWI convictions do not involve moral turpitude and therefore should not have been introduced, and the convictions were not admissible because they were over 10 years old.

**Standard of Review**

 Preliminary questions concerning the admissibility of evidence are determined by the trial court. TEX.R.EVID. 104(a). The trial court's decision to admit or exclude evidence will not be overturned on appeal unless the trial court abused its discretion. *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex.1995). To obtain reversal based on the erroneous admission of evidence, the appellant must show three elements: (1) the trial court erroneously admitted evidence, (2) no other similar evidence was admitted, and (3) the error probably caused the rendition of an improper judgment. *Alvarado v. Farah Mfg. Co., Inc.*, 830 S.W.2d 911, 917 (Tex.1992); *Felker v. Petrolon, Inc.*, 929 S.W.2d 460, 467 (Tex.App.—Houston [1st Dist.] 1996, writ denied).

 Instead of addressing whether the admission of the convictions was error, we first address the third part of the test, whether the admission of the convictions was harmful. Only if we find the admission was harmful do we need to address the issue of whether the admission was error.

 Under the third part of the test, the issue is whether error, if any, in the admission of the convictions caused the rendition of an improper judgment? *See* Tex.R.App.P. 44.1(a)(1); *Alvarado*, 830 S.W.2d at 917. This is not a "but for" test. *McCraw v. Maris*, 828 S.W.2d 756, 758 (Tex.1992). The test is whether the error "probably" resulted in an improper judgment. *Id.; $18,800 in U.S. Currency v. State*, 961 S.W.2d 257, 266 (Tex.App.—Houston [1st Dist.] 1997, no writ); *see also* Tex.R.App.P. 44.1 ("No judgment may be reversed ... unless ... the error complained of ... probably caused the rendition of an improper judgment....")

Testimony revealed that on one occasion, McGee developed a false paranoid belief there was an intruder in the attic of her mother's home. To scare the "intruder," McGee lit the wooden stem of a bottle rocket firecracker and threw it in the attic. In essence, McGee threw lit matches into the attic of the home where her children were living. On another occasion, McGee invited a homeless stranger into her mother's home to stay with them. This man ultimately had to be removed by the police. The testimony was replete with examples of McGee's paranoia and harassment. Her sons had to be removed from the home of family friends because McGee harassed the family with frequent telephone calls, and even falsely told the police the family was abusing her sons. McGee's conduct so concerned the jury that it sent the judge a question during deliberations asking whether McGee would have access to their names and addresses.

Several witnesses testified they thought McGee had a drug problem. This suspicion could not be confirmed, because McGee diluted her urine each time it was tested, thus contaminating the results. McGee was sent to Turning Point, a drug and alcohol counseling facility, to have her urine tested due to concern she was mixing her prescription psychotherapy medications with alcohol. She was terminated

from the program for noncompliance because her urine samples were diluted.

Christie Fleming, a DPRS caseworker, testified McGee gave her younger son tranquilizers prescribed for the older one. McGee did this without contacting a physician or pharmacist to determine the correct dosage for the child even though the boy was five years younger than the one for whom the medication was prescribed.

McGee suffered from delusional and paranoid episodes. The police were called to her mother's house on at least 10 occasions to respond to break-ins or other disturbances, falsely reported by McGee. On one occasion, McGee reported someone broke in and wrote on the wall in a strange language. She ignored the fact that the writing resembled a child's scribble and was written on the wall near the one of the boys' bed.

McGee was involuntarily placed in the Harris County Psychiatric Center on January 6, 1998 after she called the police complaining that someone was looking in her windows. She had threatened to commit suicide on a few occasions, the last time in 1997.

Dr. John Douglas Trani, a psychologist, testified that twice a week, McGee left messages on his answering machine. Because of the improbability of the incidents described on her messages, Dr. Trani believed she was delusional. She sounded panicked on the messages, thus supporting his belief that she was suffering from schizophrenia or other long-term mental illnesses. Dr. Trani noted improvement in the boys' behavior after they were removed from McGee.

Considering all the evidence outlined above, we find the admission of the convictions did not result in an improper judgment. We find any error in admitting the convictions was harmless.

We overrule point of error one.

We affirm the judgment.